IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ANDREW K. REEVES, | ) | CASE NO. 8:04CV56 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| AIRLITE PLASTICS, CO., et al. | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' Motion for Summary Judgment (Filing No. 69), and the Plaintiff's Motion for Summary Judgment (Filing No. 75). The parties have submitted briefs and indexes of evidence in support of their respective positions. For the reasons stated below, both motions will be denied, although the issues remaining for trial are substantially narrowed.

## FACTS

The Defendants have moved for summary judgment based on the running of the applicable statute of limitations. The Defendants' brief includes a statement of facts that appears to comply with NECivR 56.1, although the index of evidence and other materials cited in support of the stated facts do not necessarily provide the purported support. For example, the Defendants state that "account statements were provided to Reeves no later than 3 months following the end of each calendar quarter beginning in 2000." (Defendants' Brief, Filing No. 71, p. 2, ¶10). The evidentiary materials cited in support of that factual assertion, however, do not provide the Court with the necessary foundation to establish when or how the account statements were provided to Reeves.

Reeves's combined brief in opposition to the Defendants' motion for summary judgment and in support of his own motion for summary judgment does not contain a

response to the Defendants' statement of facts in compliance with NECivR 56.1(b)(1), and, therefore, "*[p]roperly referenced* material facts in the movant's statement will be deemed admitted." (*Id.,* emphasis added).

The Plaintiff, Andrew Reeves ("Reeves"), began participating in Airlite Plastic Company's 401(k)[1] employee retirement plan (the "Plan") on July 1, 1989. (Second Amended Complaint, Filing No. 38, ¶4; Amended Answers to Second Amended Complaint, Filing Nos. 61-63 ¶4). Effective January 1, 2000, the Plan was amended to allow participants to direct the investment of their own accounts. (Affidavit of LaClair N. Duimstra ("Duimstra Aff.") Filing No. 70, ¶4 and Ex. 1). The Plan's rules allowing participants to direct their own investments included a default provision, stating that if a participant failed to direct the investment of his or her own account, the participant's account would automatically be invested in a money-market fund. (Second Amended Complaint ¶7; Amended Answers to Second Amended Complaint ¶7).

The Defendants acknowledge that although Reeves did not make an investment election, his account was *not* invested in the money market fund, but instead was invested in a common stock fund that lost value in comparison to the result that would have been obtained if the funds had been in a money market account. (Defendants' Brief, Filing No. 71 ¶¶4-6; Plaintiff's Brief, Filing No. 76 ¶¶4-6). Reeves's quarterly account statement for January 12, 2000, to March 31, 2000, showed that his account balance increased from

---

[1] The deferred compensation plan was established under 26 U.S.C. § 401(k).  The Court appreciates defense counsel's explanation that the Plan was at all times a § 401(k) plan and, effective January 1, 2000, was amended to allow individual participant direction of investments under 29 U.S.C. § 1104(c), also referred to as § 404(c) of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq., "ERISA." (Defendants' Brief, Filing No. 71, 4-5).  References in earlier memoranda to the plan being "converted" from a 401(k) plan to a 404(c) plan are in error, although such error in no way affected the Court's disposition of the matters before it.

$93,857.31 to $95,490.99, with all funds being transferred into a "D-COMMON STOCK" account. (Deposition of Andrew Reeves, Filing No. 70 ("Reeves Depo.") Ex. 8). Further quarterly account statements for Reeves's retirement account showed its value decrease from $95,490.99 on April 1, 2000, to $87,976.03 on July 7, 2000, to $86,610.53 on September 30, 2000, and to $75,866.82 on December 31, 2000. (Duimstra Aff. ¶¶9-12 and Ex. 3; and Reeves Depo., Exs. 9-10).

Reeves's attorney acknowledges that Reeves "likely did receive balance notices from Defendants but simply discarded them unopened with the rest of the 'junk mail' he received on a daily basis in his regular mail." (Filing No. 51, brief in support of Plaintiff's first motion for summary judgment, p. 18). Reeves frankly admits that he did not look at his statements regarding his investments, including his retirement account.

> Q: Do you review these statements when you receive them?
> A: No.
> Q: Does someone review them for you?
> A. No.

(Reeves's Depo. 8:10-14).

> Q: Tell me what you do.
> A. It depends on what the statements are.
> Q. Okay.
> A. Sometimes I throw them away, sometimes they are in bank responses that never get opened, and sometimes I open them. It depends on what the statements are.
> Q. Which ones do you open on a regular basis?
> A. On the retirement accounts, I don't.

(*Id.* 9:14-23).

> Q: Did you keep any of your account statements prior to December 31 of 1999, regarding the 401(k) plan with Airlite?
> A: No.
> Q: When did you dispose of these?
> A: They were - - The times that I did see them, which were few and far between, they were so out of date, you know, I'd open it up and pitch it. Didn't even look at it.

(*Id.* 12:6-14).

3

> Q: So, you're saying you would have received a statement like this [referring to account statement from July 1, 1999, through December 31, 1999] in February, March of 2000?
> A: Yeah, Sometimes even later than that.
> Q: Okay.
> A: And that's why I just started ignoring them.

(Id. 14:7-13).

> Q: Do you recall receiving this statement [referring to account statement from January 1, 2000, through March 31, 2000]?
> A: No.
> Q: If it would have been sent to you, would you have opened the mail to review it?
> A: No.

(Id. 17:23 to 18:3).

> Q: From December of 1999 through September of 2003, did you ever open any of the statements from the Airlite 401(k) plan?
> A: Not that I remember.
> Q: Now, you were saying that - -
> A: Nor did I even see the statements, do I remember, even.
> Q: Are you saying you don't remember receiving them?
> A: Correct.
> Q: Okay.
> A: Let me clarify something for you. with regards to finances and dealings with my financial life, everything — or at least I try to have everything go to my post office box. My other family members love to go to the mailbox and sort it, and whatever comes out, I occasionally take a look at
> . . . .
> Q: Would they decide what goes in the trash?
> A: And sort it? They'd sort it; my wife would trash it.
> Q: She would review it before she trashed it, though, to make certain - -
> A: She wouldn't even open it. She'd trash it.

(*Id.* 28:6 to 29:17).

On August 19, 2003, Reeves filed an administrative claim alleging a breach of fiduciary duty for the loss in value that his account suffered by reason of remaining in the common stock fund rather than the money market fund. (Duimstra Aff. ¶5 and Ex. 2). The Plan's administrative committee denied Reeves's claim, finding that it was barred by the statute of limitations for claims of fiduciary breach under 29 U.S.C. §1113. Reeves did not pursue an appeal of his administrative claim. (Duimstra Aff. ¶ 6; Affidavit of William C.

4

Brown, Filing No. 70 ("Brown Aff.") ¶7). Reeves filed this action on February 12, 2004, invoking the Court's jurisdiction under 29 U.S.C. §1132(a)(3)(B); alleging that the Defendants breached fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §1001, *et seq.* (ERISA); and seeking restitution of lost principal and interest, attorney's fees, and other equitable relief. (Filing No. 1).

## PROCEDURAL HISTORY

The Court has issued three prior orders in this case, dealing with dispositive motions. On August 2, 2004, the Court denied the Defendants' motion to dismiss the action for Reeves's failure to exhaust his administrative remedies, and failure to name an indispensable party. (Filing No. 20). On December 10, 2004, the Court denied the Defendants' motion to dismiss the Complaint for failure to state a claim upon which relief can be granted, but questioned whether any viable claim Reeves may have would lie under §1132(a)(1) and not §1132(a)(3). (Filing No. 32, p.7). Contrary to the assertion by Reeves's counsel (Plaintiff's Brief, Filing No. 76, p. 16), the Court did *not* find that the Defendants breached any fiduciary duty to Reeves. On December 16, 2004, Reeves filed a Second Amended Complaint that added "29 U.S.C. § 1132(a)(1)(B)" in the statement of jurisdiction, but otherwise left the allegations and claims unchanged. (Filing No. 38). On June 3, 2005, the Court denied Reeves's motion for summary judgment, noting that "Reeves has not demonstrated the absence of any genuine issue of material fact that the Defendants breached a fiduciary duty, that any such breach was the proximate cause of damage to Reeves, the amount of such damage, or that his action was timely filed under

29 U.S.C. § 1113." (Filing No. 65, p.5).  The Court questioned whether Reeves had pled any cause of action under §1132(a)(1)(B).  (*Id.* 5-6).

The Defendants have moved for summary judgment, alleging that Reeves's action was not filed within the applicable statute of limitations.  Reeves has submitted a second motion for summary judgment, again focused on the Defendants' alleged breaches of fiduciary duties.

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003).  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."  *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

*Statutory Framework*

Reeves pled his action as one for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3)(B). Section 1132(a)(3) provides:

> A civil action may be brought – (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

The ERISA fiduciary standard is set forth in 29 U.S.C. § 1104(a)(1)(B)(C) and (D) which provides:

> . . . [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting an a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;

7

> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this subchapter.

The statute of limitations for bringing an action for *fiduciary breach* under ERISA is set forth in 29 U.S.C. § 1113:

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.
> Except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Because Reeves has not alleged any fraud or concealment on the part of the Defendants, the applicable statute of limitations for his cause of action for breach of fiduciary duty is three years after the earliest date on which he had actual knowledge of the breach or violation. Reeves contends that he did not have actual knowledge of the violation until April 2003, when he received a letter from Metlife, informing him that his portfolio was in a stock fund and had a value of $34,186.83. (Second Amended Complaint, Filing No. 38, ¶10).

Although Reeves's Second Amended Complaint included a reference to § 1132(a)(1)(B) in the jurisdictional statement, he has not otherwise pled any cause of action under § 1132(a)(1)(B)[2], which provides:

---

[2] The deadline for amending pleadings was March 15, 2005. See Progression Order dated January 7, 2005 (Filing No. 43), paragraph 5. I also recognize that if Reeves's were to attempt to proceed on a theory of recovery under § 1132(a)(1)(B) at this time, the Defendants' arguments relative to exhaustion of administrative remedies (addressed in my Order of August 2, 2004) may have more merit in

8

> A civil action may be brought – (1) by a participant or beneficiary – (B) to recover benefits due to him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . . .

The Defendants contend that, if Reeves *did* plead any claim under 29 U.S.C. § 1132(a)(1)(B), the applicable statute of limitations for that claim would also be three years. The Defendants cite Neb. Rev. Stat. § 25-219 (1995), which provides: "All actions upon a liability created by a federal statute, other than a forfeiture or penalty, for which actions no period of limitations is provided in such statute shall be commenced within three years next after the cause of action shall have accrued." A Nebraska district judge who applied that statute of limitations to an action under § 1132(a)(1)(B) was reversed in 1992. In *Schroeder v. Phillips Petroleum Company*, 970 F.2d 419 (8th Cir. 1992), the Eighth Circuit Court said:

> In *Johnson* [*v. State Mut. Life Assur. Co. of America*, 942 F.2d 1260 (8th Cir. 1991)(en banc)] we held that 'a suit for ERISA benefits under § 1132(a)(1)(B) should be characterized as a contract action for statute of limitations purposes, unless a breach of the ERISA trustee's fiduciary duties is alleged.' *Id*. at 1263. Plaintiffs did not allege a breach of the trustee's fiduciary duties in this instance. Therefore, under federal law, the action is characterized as a contract action, and we conclude that the most analogous statute of limitations under Nebraska law is the *five-year* statute of limitations for actions on written contracts. See Neb. Rev. Stat. § 25-205 (Reissue 1989).

*Id.* at 420, emphasis added.

*Reeves's Motion for Summary Judgment*

Reeves has pled and argued his action as one for breach of fiduciary duty. It is undisputed that Reeves's funds were placed in the wrong account. Such an error standing alone, however, does not prove a breach of fiduciary duty under § 1104(a).

Neither has Reeves demonstrated that his action was filed within the three-year statute of limitations applicable to breach-of-fiduciary-duty claims. While the applicable

---

light of the fact that Reeves's administrative claim was brought under the breach-of-fiduciary duty theory.

9

statute of limitations is a question of law, there are questions of fact regarding when Reeves had "actual knowledge" of the alleged breaches of fiduciary duty. His retirement account statement for January 1, 2000, to March 31, 2000 (Reeves Depo., Ex. 8), clearly shows his funds being transferred into the "D-COMMON STOCK" account. His statements for April 1, 2000, to June 30, 2000 (*Id.*, Ex. 9); July 1, 2000, to September 30, 2000 (Brown Aff., Ex. 3); and October 1, 2000, to December 31, 2000, (Reeves Depo. Ex. 10); clearly show each ending balance lower than each beginning balance. These are not complex documents that would require a careful review or the acumen of an experienced investor to interpret. They consist of a few lines of data requiring only the most cursory glance to ascertain whether the account has grown or diminished in value during the designated quarter. Any plan participant expecting his account to be invested in a money market fund would have actual knowledge of an error upon seeing the ending balance decrease from the beginning balance.

Reeves's deposition shows that he deliberately refused to look at his account statements. The question becomes: Can an ERISA plan participant disavow "actual knowledge" of an alleged fiduciary breach by deliberately ignoring information that is clearly presented? In other words, is ERISA designed to protect the proverbial "he who *will not see*"? The answer must be: "No."

Even though ERISA was enacted to protect the rights of plan participants, any interpretation of the term "actual knowledge" that would allow a participant to refuse to accept and acknowledge information clearly set before him is untenable. A plaintiff can always disavow actual knowledge, and the inner workings of the plaintiff's mind are impossible for a defendant to prove. Under a strict interpretation of the "actual knowledge" standard, if an error were made in the allocation of a participant's money among

10

investment funds, as in this case, the participant could simply disavow knowledge of the error and wait indefinitely to see whether it worked to his benefit before "crying foul" and asserting his rights under ERISA.

Reeves's motion for summary judgment will be denied because (1) he has not demonstrated the absence of any genuine issue of material fact with respect to the commission of a fiduciary breach, and (2) he has not demonstrated that he filed his action within the applicable statute of limitations.

*The Defendants' Motion for Summary Judgment*

The Defendants have not presented competent evidence demonstrating *when* Reeves's 2000 quarterly account statements were sent to him, *how* they were sent, or *where* they were sent. Defendants' reference to the fact that the "administrative record disposition of his claim assumes he received four account statements"[3] at certain time intervals, is not evidence demonstrating the absence of any genuine issue of material fact. Reeves's testimony[4] that he ignored his 401(k) plan statements from Airlite because they came "literally, two-or-three months after the last date . . . to make them, in my opinion, useless," is also not competent evidence to demonstrate when the 2000 statements were sent or delivered to Reeves. Accordingly, the Defendants' Motion for Summary Judgment based on the alleged running of the statute of limitations will be denied.

*Issues Remaining for Trial*

Because this case will be tried to the Court, and because I have had the benefit of ruling on three previous dispositive motions, I will provide some guidance regarding how I view the disposition of remaining issues.

---

[3] Defendants' Brief, Filing No. 71, p.6.

[4] Reeves Depo. 13:10-13.

11

Reeves has chosen to proceed with his action under the breach-of-fiduciary-duty theory.[5]  He has not pled any action under § 1132(a)(1)(B), and he will be required to present his case solely on the theory pled under § 1132(a)(3)(B).

The applicable statute of limitations is three years, as set forth in § 1113(2), and it began to run no later than when the quarterly account statement for April 1, 2000, to June 30, 2000, (Reeves Depo. Ex. 9), was delivered to Reeves, whether or not he decided to ignore it.[6]  If the Defendants present competent undisputed evidence showing that the quarterly account statement for April 1, 2000, to June 30, 2000, or a subsequent account statement was sent to Reeves, at an address designated by him, allowing for delivery by a reliable carrier before February 12, 2001, then Reeves's action will be dismissed based on his failure to file within the applicable three-year statute of limitations.  The Defendants need not present an affidavit of the employee who actually *mailed* the quarterly statements. An affidavit based on personal knowledge of one who can describe the routine practice of mailing quarterly statements related to the Defendants' 401(k) Plan and Employee Trust during the relevant time will likely suffice.  If no such competent evidence is presented within the time prescribed below, then Reeves may proceed at trial with the presentation of any evidence he may have that the Defendants or any of them violated § 1104(a)(1).

---

[5]In my order of December 10, 2004 (Filing No. 32, pp. 4-7), I compared the provisions of §1132(a)(3) and § 1132(a)(1) and questioned whether Reeves's cause of action might not lie under §1132(a)(1).  In my order of June 3, 2005, I questioned whether Reeves's second amended complaint pled any claim under §1132(a)(1)(B), and specifically referred to the case law and statutory authority for the longer statute of limitations applicable under §1132(a)(1).  Regardless, Reeves has chosen to proceed under the breach-of-fiduciary duty theory.  It is doubtful that he can proceed under both theories, and it is questionable whether he can proceed under §1132(a)(3) if he acknowledges that he *has* a cause of action under §1132(a)(1)(B).  See *Varity v. Howe*, 516 U.S. 489, 515 (1996; *Wald v. Southwestern Bell*, et al., 83 F.3d 1002 (8th Cir. 1996).

[6]It could well be argued that the limitations period began to run when the statement for January 1, 2000, to March 31, 2000, was delivered to Reeves (Reeves Depo. Ex. 8).  Exhibit 8 shows his funds transferred into the "D-COMMON STOCK" fund.  Exhibit 9 shows the total balance in his account decreasing more than $7,000 during the quarter.

If he succeeds in demonstrating such a breach of fiduciary duty, the Court will receive evidence and hear argument regarding what *equitable* relief, if any, is available to him under § 1132(a)(3)(B).

IT IS ORDERED:

(1) The Plaintiff's Motion for Summary Judgment (Filing No. 75) is denied;

(2) The Defendants are given leave to supplement the evidentiary record in support of their Motion for Summary Judgment (Filing No. 69) on or before Tuesday, September 13, 2005, by filing a supplemental index of evidence that shall include the affidavit of someone with personal knowledge of the process and procedure for mailing quarterly account statements for the Defendants' 401(k) Plan and Employee Trust during the relevant period, approximately January 1, 2000, to February 12, 2001;

(3) The Plaintiff is given leave to supplement his evidence in opposition to the Defendant's Motion for Summary Judgment on or before Tuesday, September 20, 2005, with any evidence demonstrating that there are genuine issues of material fact regarding the evidence in the Defendant's supplemental index of evidence; and

(4) The planning conference before Magistrate Judge Gossett scheduled for September 12, 2005, is hereby postponed until further order of the Court.

DATED this 6th day of September, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge