**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **ANDREW K. REEVES,** | ) | **CASE NO. 8:04CV56** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| **AIRLITE PLASTICS, CO., et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on the Defendants' Motion for Summary Judgment (Filing No. 69), in which the Defendants allege that the Plaintiff's action is barred by the applicable statute of limitations. In my Order of September 6, 2005, I gave the Defendants leave to file a supplemental index of evidence on or before September 13, 2005, specifically addressing the questions of how, when, and where certain quarterly statements of the Plaintiff's 401(k) account were sent to him during the relevant period of approximately January 1, 2000, to February 12, 2001.

The Defendants have submitted such an index (Filing No. 86) and affidavits and exhibits (Filing Nos. 84 and 85) demonstrating that quarterly statements of the Plaintiff's 401(k) account were mailed to him at the address he provided, as follows: (1) the statement covering the period of January 1 to March 31, 2000, was mailed within a few days after June 2, 2000; (2) the statement covering the period of April to June 30, 2000, was mailed within a few days after August 22, 2000; and (3) the statement for the period of July 1 to September 30, 2000, was mailed within a few days after November 7, 2000. (Supplemental Affidavit of LaClair N. Duimstra, Filing No. 84, ¶¶ 7, 8, 13-15, and Exhibits A-C; Affidavit of Tracy Fields, Filing No. 85, ¶¶ 5 and 6). The Plaintiff has submitted no

further evidence in response, and has never denied that the statements were received at his address, although he has denied that he ever paid any attention to them.

Because there is no genuine issue of material fact in this case, and because I find as a matter of law that the statute of limitations on the Plaintiff's cause of action for breach of fiduciary duty expired before the filing of this action, the Defendants' Motion for Summary Judgment will be granted. I will reiterate certain facts and legal analysis leading to this conclusion, for the benefit of any person who may be encountering this case for the first time through this order.[1]

## FACTS

The Plaintiff, Andrew Reeves ("Reeves"), began participating in Airlite Plastic Company's 401(k) employee retirement plan (the "Plan") on July 1, 1989. (Second Amended Complaint, Filing No. 38, ¶4; Amended Answers to Second Amended Complaint, Filing Nos. 61-63 ¶4). Effective January 1, 2000, the Plan was amended to allow participants to direct the investment of their own accounts. (Affidavit of LaClair N. Duimstra ("Duimstra Aff.") Filing No. 70, ¶4 and Ex. 1). The Plan's rules allowing participants to direct their own investments included a default provision, stating that if a participant failed to direct the investment of his or her own account, the participant's account would automatically be invested in a money-market fund. (Second Amended Complaint ¶7; Amended Answers to Second Amended Complaint ¶7).

The Defendants acknowledge that although Reeves did not make an investment election, his account was *not* invested in the money market fund, but instead was invested

---

[1] Any reader seeking a fuller understanding of the progress of this case should refer to four prior orders of this Court: (1) Filing No. 20, denying the Defendants' first motion to dismiss; (2) Filing No. 32, denying the Defendants' second motion to dismiss; (3) Filing No. 65, denying the Plaintiff's first motion for summary judgment; and (4) Filing No. 83, denying the Plaintiff's second motion for summary judgment.

in a common stock fund that lost value in comparison to the result that would have been obtained if the funds had been in a money market account. (Defendants' Brief, Filing No. 71 ¶¶4-6; Plaintiff's Brief, Filing No. 76 ¶¶4-6). Reeves's quarterly account statement for January 12, 2000, to March 31, 2000, showed that his account balance increased from $93,857.31 to $95,490.99, with all funds being transferred into a "D-COMMON STOCK" account. (Deposition of Andrew Reeves, Filing No. 70 ("Reeves Depo.") Ex. 8). Further quarterly account statements for Reeves's retirement account showed its value decrease from $95,490.99 on April 1, 2000, to $87,976.03 on July 7, 2000, to $86,610.53 on September 30, 2000, and to $75,866.82 on December 31, 2000. (Duimstra Aff. ¶¶9-12 and Ex. 3; and Reeves Depo., Exs. 9-10).

Reeves's attorney acknowledges that Reeves "likely did receive balance notices from Defendants but simply discarded them unopened with the rest of the 'junk mail' he received on a daily basis in his regular mail." (Filing No. 51, brief in support of Plaintiff's first motion for summary judgment, p. 18). Reeves frankly admits that he did not look at his statements regarding his investments, including his retirement account.

```
	Q:	Do you review these statements when you receive them?
	A:	No.
	Q:	Does someone review them for you?
	A.	No.
```
(Reeves's Depo. 8:10-14).

```
	Q:	Tell me what you do.
	A.	It depends on what the statements are.
	Q.	Okay.
	A.	Sometimes I throw them away, sometimes they are in bank responses that
		never get opened, and sometimes I open them. It depends on what the
		statements are.
	Q.	Which ones do you open on a regular basis?
	A.	On the retirement accounts, I don't.
```
(*Id.* 9:14-23).

> Q: Did you keep any of your account statements prior to December 31 of 1999, regarding the 401(k) plan with Airlite?
> A: No.
> Q: When did you dispose of these?
> A: They were - - The times that I did see them, which were few and far between, they were so out of date, you know, I'd open it up and pitch it. Didn't even look at it.

(*Id.* 12:6-14).

> Q: So, you're saying you would have received a statement like this [referring to account statement from July 1, 1999, through December 31, 1999] in February, March of 2000?
> A: Yeah, Sometimes even later than that.
> Q: Okay.
> A: And that's why I just started ignoring them.

(Id. 14:7-13).

> Q: Do you recall receiving this statement [referring to account statement from January 1, 2000, through March 31, 2000]?
> A: No.
> Q: If it would have been sent to you, would you have opened the mail to review it?
> A: No.

(Id. 17:23 to 18:3).

> Q: From December of 1999 through September of 2003, did you ever open any of the statements from the Airlite 401(k) plan?
> A: Not that I remember.
> Q: Now, you were saying that - -
> A: Nor did I even see the statements, do I remember, even.
> Q: Are you saying you don't remember receiving them?
> A: Correct.
> Q: Okay.
> A: Let me clarify something for you. with regards to finances and dealings with my financial life, everything — or at least I try to have everything go to my post office box. My other family members love to go to the mailbox and sort it, and whatever comes out, I occasionally take a look at
>
> . . . .
> Q: Would they decide what goes in the trash?
> A: And sort it? They'd sort it; my wife would trash it.
> Q: She would review it before she trashed it, though, to make certain - -
> A: She wouldn't even open it. She'd trash it.

(*Id.* 28:6 to 29:17).

4

On August 19, 2003, Reeves filed an administrative claim alleging a breach of fiduciary duty for the loss in value that his account suffered by reason of remaining in the common stock fund rather than the money market fund. (Duimstra Aff. ¶5 and Ex. 2). The Plan's administrative committee denied Reeves's claim, finding that it was barred by the statute of limitations for claims of fiduciary breach under 29 U.S.C. §1113. Reeves did not pursue an appeal of his administrative claim. (Duimstra Aff. ¶ 6; Affidavit of William C. Brown, Filing No. 70 ("Brown Aff.") ¶7). Reeves filed this action on February 12, 2004, invoking the Court's jurisdiction under 29 U.S.C. §1132(a)(3)(B); alleging that the Defendants breached fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §1001, *et seq.* (ERISA); and seeking restitution of lost principal and interest, attorney's fees, and other equitable relief. (Filing No. 1).

## PROCEDURAL HISTORY

On August 2, 2004, the Court denied the Defendants' motion to dismiss the action for Reeves's failure to exhaust his administrative remedies, and failure to name an indispensable party. (Filing No. 20). On December 10, 2004, the Court denied the Defendants' motion to dismiss the Complaint for failure to state a claim upon which relief can be granted, but questioned whether any viable claim Reeves may have would lie under §1132(a)(1) and not §1132(a)(3). (Filing No. 32, p.7). On December 16, 2004, Reeves filed a Second Amended Complaint that added "29 U.S.C. § 1132(a)(1)(B)" in the statement of jurisdiction, but otherwise left the allegations and claims unchanged. (Filing No. 38). On June 3, 2005, the Court denied Reeves's motion for summary judgment, noting that "Reeves has not demonstrated the absence of any genuine issue of material fact that the Defendants breached a fiduciary duty, that any such breach was the proximate

5

cause of damage to Reeves, the amount of such damage, or that his action was timely filed under 29 U.S.C. § 1113." (Filing No. 65, p.5).  The Court questioned whether Reeves had pled any cause of action under §1132(a)(1)(B).  (*Id.* 5-6).

On July 6, 2005, the Defendants moved for summary judgment, alleging that Reeves's action was not filed within the applicable statute of limitations, and on July 16, 2005, Reeves submitted a second motion for summary judgment, again focused on the Defendants' alleged breaches of fiduciary duties.  The Court denied Reeves's Motion for Summary Judgment, and allowed the parties to submit amended indexes of evidence to demonstrate when, where, and how the quarterly statements of Reeves's 402(k) account were mailed to him.  (Filing No. 83).

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003).  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id.* at 324-25.

6

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

Reeves pled his action as one for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3)(B).[2]  Section 1132(a)(3) provides:

> A civil action may be brought – (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

---

[2] If Reeves were to attempt to proceed on a theory of recovery under § 1132(a)(1)(B), the Defendants' arguments relative to exhaustion of administrative remedies (addressed in my Order of August 2, 2004, Filing No. 20) could have more merit because Reeves's administrative claim was brought under the breach-of-fiduciary duty theory.

7

The ERISA fiduciary standard is set forth in 29 U.S.C. § 1104(a)(1)(B)(C) and (D), which provides:

> . . . [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . .
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting an a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this subchapter.

The statute of limitations for bringing an action for *fiduciary breach* under ERISA is set forth in 29 U.S.C. § 1113:

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Because Reeves did not allege any fraud or concealment on the part of the Defendants, the applicable statute of limitations for his cause of action for breach of fiduciary duty is three years, running from the earliest date on which he had actual knowledge that the Defendants had invested his funds in violation of the Plan documents. See, *e.g.*, *Brown v. American Life Holdings, Inc.*, 190 F.3d 856, 859 (8th Cir. 1999), stating that "if the fiduciary made an *illegal* investment" and not merely an imprudent investment, "knowledge of the transaction would be actual knowledge of the breach." (emphasis in

8

original). Reeves contends that he did not have actual knowledge of the alleged fiduciary breach until April 2003, when he received a letter from Metlife, informing him that his portfolio was in a stock fund and had a value of $34,186.83. (Second Amended Complaint, Filing No. 38, ¶10).

Reeves's retirement account statement for January 1, 2000, to March 31, 2000 (Reeves Depo., Ex. 8), clearly shows his funds being transferred into the "D-COMMON STOCK" account. His statements for April 1, 2000, to June 30, 2000 (*Id.*, Ex. 9); July 1, 2000, to September 30, 2000 (Brown Aff., Ex. 3); and October 1, 2000, to December 31, 2000, (Reeves Depo. Ex. 10); clearly show each ending balance lower than each beginning balance. These are not complex documents that would require a careful review or the acumen of an experienced investor to interpret. They consist of a few lines of data requiring only the most cursory glance to ascertain whether the account has grown or diminished in value during the designated quarter. Any plan participant expecting his account to be invested in a money market fund would have actual knowledge of an error upon seeing the ending balance decrease from the beginning balance.

Reeves's deposition shows that he deliberately refused to look at his account statements. The question becomes: Can an ERISA plan participant disavow "actual knowledge" of an alleged fiduciary breach by deliberately ignoring information that is clearly presented? In other words, is ERISA designed to protect the proverbial "he who *will not* see"?

Although the Eighth Circuit Court of Appeals has not directly addressed the issue, the First Circuit Court of Appeals, in dicta, has rejected the idea that an ERISA plaintiff may deliberately disregard facts that would put him on notice that a violation of the statute has occurred. *See Edes v. Verizon Communications, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005)

9

("we do not think Congress intended the actual knowledge requirement to excuse willful blindness by a plaintiff.")  I agree with the First Circuit Court's observation, and also find the authorities relied on by the Defendants to be persuasive: *UMG Recordings, Inc. v. Sinnott,* 300 F. Supp. 2d 993, 1000 (E.D.Cal. 2004)(defendant's actual knowledge was inferred in copyright infringement case although he purposely refused to witness the infringement and chose not to read written notices sent to him); *Committee on Grievances of the United States District Court for the Eastern District of New York v. Feinman,* 239 F.3d 498, 505 (2nd Cir. 2001)(lawyer's actual notice of charges against him was inferred despite his refusal of delivery of communications); *Erhard v. Commissioner Internal Revenue Service*, 87 F.3d 273, 274-75 (9th Cir. 1996)(taxpayer's actual notice of deficiency inferred despite refusal of delivery of notice).  Prohibiting a plaintiff from benefitting from his own "willful blindness" at another party's expense also furthers the meritorious public policies underlying statutes of limitations.

Even though ERISA was enacted to protect the rights of plan participants, any interpretation of the term "actual knowledge" that would allow a participant to refuse to accept and acknowledge information clearly set before him is untenable.  A plaintiff can always disavow actual knowledge, and the inner workings of the plaintiff's mind are impossible for a defendant to prove.  Under a strict interpretation of the "actual knowledge" standard, if an error were made in the allocation of a participant's money among investment funds, as in this case, the participant could simply disavow knowledge of the error and wait indefinitely to see whether it worked to his benefit before "crying foul" and asserting his rights under ERISA.

## CONCLUSION

The applicable statute of limitations is three years, as set forth in § 1113(2), and it began to run no later than when the quarterly account statement for April 1, 2000, to June 30, 2000, (Reeves Depo. Ex. 9), was delivered to Reeves, whether or not he decided to ignore it.[3]  Because the undisputed evidence before the Court shows that the statement was sent to the address designated by Reeves within "a few days after" August 22, 2000, I find that the three-year statute of limitations expired before Reeves filed this action on February 12, 2004.

IT IS ORDERED:

(1) The Defendants' Motion for Summary Judgment (Filing No. 69) is granted; and

(2) A separate Judgment will be entered.

DATED this 26th day of September, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[3] It could well be argued that the limitations period began to run when the statement for January 1, 2000, to March 31, 2000, was delivered to Reeves (Reeves Depo. Ex. 8).  Exhibit 8 shows his funds transferred into the "D-COMMON STOCK" fund.  Exhibit 9 shows the total balance in his account decreasing more than $7,000 during the quarter.

11